IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Harvest Institute Freedman Federation, et al., Plaintiffs v. Dirk Kempthorne, Department of the Interior, et al. Defendants. | ) | Judge Robert Hodges 06-907 L |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

RONALD J. TENPAS
Acting Assistant Attorney General

Daniel G. Steele
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C., 20044-0663
Tel: (202) 305 - 0484
Facsimile: (202) 305-0267

Of Counsel:
Jane Smith, Esquire
Attorney-Advisor
Bureau of Indian Affairs
United States Department of the Interior
1849 C Street
Washington, D.C. 20240

# TABLE OF CONTENTS


Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. THE CONTINUING CLAIM DOCTRINE DOES NOT, BY ITSELF, GIVE THE COURT JURISDICTION OVER PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The Continuing Claim Doctrine Does Not Waive the Requirement That Plaintiffs Demonstrate Money-Mandating Obligations Which Are Owed to Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. Assuming a Money-Mandating Obligation, the Continuing Claim Doctrine is Unavailing Where the Event Complained of is Singular, Discrete, or Unitary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1. The alleged failure of the United States to cause discrete and singular acts of allotment around 1866 does not invoke the continuing claims doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2. Authority cited by Plaintiffs does not support their continuing claim allegation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3. The continuing claim doctrine can have no application where subsequent land allotment agreements, modifying the treaties, superceded whatever property rights the Freedmen had pursuant to the treaties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. THE ENTITIES DO NOT FULFILL BASIC STANDING REQUIREMENTS THAT WOULD ALLOW THEM TO REPRESENT THE INTERESTS OF FREEDMEN OR LINEAL DESCENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THE COURTS JURISDICTION, NOR HAVE THEY STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF CASES

### FEDERAL CASES

*Allred v. United States*,
33 Fed. Cl. 349 (1995) . . . . . . . . . . 17

*American Int'l. Speciality Lines Ins. Co. v. United States*,
71 Fed. Cl. 37 (2006) . . . . . . . . . . 1

*Apache Tribe of Mescalero Reservation v. United States*,
43 Fed. Cl. 155 (1999) . . . . . . . . . . 6

*Applegate v. United States*,
25 F.3d 1579 (Fed. Cir. 1994) . . . . . . . . . . 6

*Ariadne Fin. Servs. Pty. Ltd. v. United States*,
133 F.3d 874, 879 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 823 (1998) . . . . . . . . . . 10

*Baka v. United States*,
74 Fed. Cl. 692 (2006) . . . . . . . . . . 7-8

*Boling v. United States*,
220 F. 3d 1365 (Fed. Cir. 2000) . . . . . . . . . . 7, 9

*Brighton Villages Assocs. v. United States*,
910 F.2d 815 (Fed Cir. 1990) . . . . . . . . . . 7

*Brown Park Estates Fairfield Development Co. v. United States*,
127 F.3d 1449 (Fed. Cir. 1997) . . . . . . . . . . 6-7, 10

*Catawba Indian Tribe v. United States*,
982 F.2d 1564 (Fed. Cir. 1993) . . . . . . . . . . 6

*Choctaw Nation of Indians v. United States*,
318 U.S. 423 (1943) . . . . . . . . . . 12

*Committee of Blind Vendors v. District of Columbia*,
695 F. Supp. 1234 (D.D.C.1988), *rev'd on other grounds*,
28 F.3d 130 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fellini v. United States*,
56 F.3d 1378 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Friedman v. United States*,
310 F.2d 381 (Ct. Cl. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Hatter v. United States*,
203 F. 3d 795 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Heim v. United States*,
50 Fed. Cl. 225 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hopland Band of Pomo Indians v. United States*,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 9

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*International Union, United Auto., Aerospace and Agric. Implement Worker of America, et al. v. Brock*,
477 U.S. 274 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Jones v. United States*,
801 F.2d 1334 (Fed. Cir. 1986), *cert. denied*, 481 U.S. 1013 (1987) . . . . . . . . . . . . . . . . 3

*KVOS, Inc. v. Associated Press*,
299 U.S. 278 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lane v. United States*,
209 Ct. Cl. 955 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Menominee Tribe v. United States*,
726 F.2d 718 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826 (1984) . . . . . . . . . . . . . . . . . . 3

*Moyer v. United States*,
190 F.3d 1314 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Nicholas v. United States*,
42 Fed. Cl. 373 (Fed. Cl. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Reid v. Dept. of Commerce*,
793 F.2d 277 (Fed. Cir. 1986) . . . . . 15

*Rocovich v. United States*,
933 F.2d 991 (Fed. Cir. 1991) . . . . . 17

*Simmons v. United States*,
71 Fed. Cl. 188 (2006) . . . . . 7, 10

*Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*,
847 F. Supp. 281 (D. Conn. 1994) . . . . . 15

*Telecommunications Research & Action Ctr. v. Allnet Communication Services, Inc.*,
806 F.2d 1093 (D.C. Cir. 1986) . . . . . 15

*United Food and Commercial Workers v. Brown Group*,
517 U.S. 544 (1996) . . . . . 14-15

*United States v. Mitchell (Mitchell I)*,
445 U.S. 535(1980) . . . . . 4

*United States v. Mitchell (Mitchell II)*,
463 U.S. 206 (1983) . . . . . 4

*United States v. Navajo Nation*,
537 U.S. 488 (2003) . . . . . 4

*Vietnam Veterans of America, Inc. v. Guerdon Indus.*,
644 F. Supp. 951 (D. Del.1986) . . . . . 16

*Warth v. Seldin*,
422 U.S. 490 (1975) . . . . . 14

**FEDERAL STATUTES**

28 U.S.C. § 2501 . . . . . 1

30 Stat. 495 (1898) . . . . . 11

30 Stat. 567 (1898) . . . . . 11

31 Stat. 250 (1900) . . . . . 11

31 Stat. 848 (1901) . . . . . 11

31 Stat. 861 (1900) . . . . . . . . . . 11

32 Stat. 500 (1902) . . . . . . . . . . 11

32 Stat. 641 (1902) . . . . . . . . . . 11

32 Stat. 716 (1902) . . . . . . . . . . 11

**FEDERAL RULES**

RCFC 12 (b)(1) . . . . . . . . . . 1, 17

RCFC 12(b)(6) . . . . . . . . . . 1, 17

**OTHER AUTHORITIES**

Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure, § 1476 (2d ed. 1987) . . . . . . . . . . 1

**EXHIBITS**

April 11, 1991 Order of Judge Harkins . . . . . . . . . . Attachment A

*Casey El v. United States*,
951 F.2d 1267 (Fed. Cir. 1991) (unpublished opinion) . . . . . . . . . . Attachment B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Harvest Institute Freedman Federation, et al., | ) | |
| Plaintiffs | ) | Judge Robert Hodges |
| v. | ) | 06-907 L |
| Dirk Kempthorne, Department of the Interior, et al. | ) | |
| Defendants. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Introduction

Defendant seeks dismissal of both the Plaintiffs' Complaint filed on December 28, 2006, and of their Amended Complaint filed on July 23, 2007.[1/] The Court lacks jurisdiction over the case, pursuant to Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and12(b)(6). The Plaintiffs' claims are time-barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501; Plaintiffs have not and cannot assert any basis that the United States breached trust responsibilities; or that the Complaint or Amended Complaint state claims to which the Court can grant relief as to the 1866 Treaties with the Seminole, Creek, and Tribes,[2/]

[1/] When an amended complaint is filed while the Government's motion to dismiss the original complaint is being briefed by the parties, as here, the Defendant is not required to respond with the filing of another motion to dismiss the amended complaint if some of the defects subject to the motion to dismiss and raised in the original pleading remain in the amended pleading. *See* Wright, Miller and Kane (2nd Ed.), *Federal Practice and Procedure*, § 1476. The Court of Federal Claims has deemed this guidance appropriate in a case almost identical to the case development presented here in *American Int'l. Speciality Lines Ins. Co. v. United States*, 71 Fed. Cl. 37, 39 (2006) (If some defects raised in original motion remain in the new pleading, court simply may consider the motion as being addressed to the amended pleading). The United States, therefore, maintains it original motion to dismiss as supplemented with this Reply which also addresses the Plaintiffs' Amended Complaint.

[2/] Like the Seminole and Creek Treaties, the Cherokee Treaty merely provided equal rights to Freedmen. It does not guarantee them any lands.

or with regard to the 1866 Treaty with the Chickasaw and Chocktaw Indians. Moreover, any claims based on the 1866 Treaty with the Chickasaw Indians are barred by the doctrines of res judicata and collateral estoppel. Finally, the Plaintiffs' prayer for declaratory relief is outside of the Court's jurisdiction.[3]

Plaintiffs' Amended Complaint renews the claims recited in their original Complaint, but asserts a new claim, that "Defendant[s] owe [sic] a continuing duty to Plaintiffs, each of which gives rise to a separate cause of action." Amended Compl. ¶ 3. Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pls' Response"), filed on July 23, 2007, also states the "continuing claims" doctrine as a new claim. The Plaintiffs' Response discusses only one other issue germane to Defendant's motion to dismiss – whether the Harvest Institute and Black Indians United Legal Defense and Education Fund ("the entities") have standing to invoke the Court's jurisdiction.

## Argument

### I. THE CONTINUING CLAIM DOCTRINE DOES NOT, BY ITSELF, GIVE THE COURT JURISDICTION OVER PLAINTIFFS' CLAIMS

The Plaintiffs' Response asserts that their claims are subject to the continuing claims doctrine. Plaintiffs' Amended Complaint also alleges that Defendant owes "a continuing duty to plaintiffs, each of which gives rise to a separate cause of action." Amended Compl. ¶ 3. Plaintiffs' continuing claim assertion does not respond to or cure the jurisdictional defects discussed in Defendant's motion to dismiss. Moreover, Plaintiffs' "cart before the horse" reasoning in their application of the continuing claim doctrine is fundamentally flawed.

Defendant seeks dismissal of the Plaintiffs' Complaint and Amended Complaint, in part,

---

[3] The Plaintiff's Amended Complaint no longer seeks injunctive relief or a writ of mandamus.

because the applicable statute of limitations of six years (28 U.S.C. 2501) requires that suit be brought within that time period after accrual of the claim. The date of "ordinary accrual" for a breach of statutory or regulatory duty is when the wrong began. *Menominee Tribe v. United States*, 726 F.2d 718, 721 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826 (1984); *see also Jones v. United States*, 801 F.2d 1334, 1335-36 (Fed. Cir. 1986), *cert. denied*, 481 U.S. 1013 (1987). Here, the actions complained of accrued many years before the six-years provided for in the Statute. Thus, the statute of limitations "is a jurisdictional limitation on the government's waiver of sovereign immunity and therefore must be construed strictly." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)). "Exceptions to the limitations and conditions upon which the government consents to be sued are not to be implied." *Hopland Band*, 855 F.2d 1573 at 1577 (citing *Soriano v. United States*, 352 U.S. 270, 276 (1957)). "Furthermore, since the 6-year limitations period of Section 2501 serves as a jurisdictional limitation rather than simply as an affirmative defense, such statutes of limitations have been held as "not capable of waiver or subject to an estoppel," whether pled or not." *Id*. (citations omitted). The Plaintiffs' claim is, therefore, time barred and subject to dismissal.

The plaintiffs do not counter or take issue with Defendant's clear and concise statement of law in support of dismissal on this point. Rather, they assert a continuing claim theory that is contrary to the narrow scope of the continuing claim doctrine. Assertion of a continuing claim from the time the events complained of accrued, at the latest by turn-of-the-century, to within six years of the lawsuit does not resurrect these long-expired claims. The assertion of a continuing claim does not provide an independent basis for the Court's jurisdiction. Not only is the claim time-barred, Plaintiffs fail completely to refute Defendant's arguments that no money mandating duty owing to the Plaintiffs was ever violated.

### A. The Continuing Claim Doctrine Does Not Waive the Requirement That Plaintiffs Demonstrate Money-Mandating Obligations Which Are Owed to Plaintiffs

To satisfy the requirements of "first" or "ordinary accrual" it is incumbent on Plaintiffs to state a cognizable claim for money damages against the United States in the first instance. In other words, the Plaintiffs "must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell,* 463 U.S. 206, 216-17 (1983) ("*Mitchell II*") (internal quotation marks omitted); *see also United States v. Navajo Nation*, 537 U.S. 488, 506 (2003). A claimant invoking the Court's jurisdiction on the basis that the United States has breached its trust responsibility must identify a statute, treaty, or regulation that imposes a specific fiduciary duty on the United States. *United States v. Mitchell,* 445 U.S. 535, 542-43 (1980) ("*Mitchell I*").

Plaintiffs asserted in the Complaint at ¶ 12 and in the Amended Complaint at ¶ 24 that the United States breached its trust responsibilities by failing to assure that land conveyances occurred under the 1866 Treaties.[4/] As shown in Defendant's Opening Brief supporting dismissal, the Plaintiffs must sustain their burden of demonstrating, first, that the Treaties, by themselves, imposed trust money-mandating duties on the United States to convey lands to the Freedmen and second, assuming that the Treaties imposed money-mandating duties, that the United States failed to fulfill those duties. The Plaintiffs, however, have not made this threshold showing that is required to invoke the Court's subject matter jurisdiction over their claim. *See e.g. Heim v. United States*, 50 Fed. Cl. 225, 237-38 (2001). Plaintiffs' Response does not discuss

[4/] In the original Complaint, Plaintiffs cited an agreement with the Cherokee rather than the 1866 Cherokee Treaty. In the Amended Complaint they claim rights under the Cherokee Treaty. Neither the 1865 Cherokee agreement nor the 1866 Cherokee Treaty provide property rights for the Cherokee Freedmen.

any aspect of the Defendant's position in this regard, nor does it make any effort to explain any "constitutional provisions, statutes, or regulations . . . [which] by their terms entitle [them] to money." *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999). Without first making this showing, an effort to demonstrate that the lawsuit is timely is unavailing.

**B. Assuming a Money-Mandating Obligation, the Continuing Claim Doctrine is Unavailing Where the Event Complained of is Singular, Discrete, or Unitary**

Assuming the existence of a money mandating obligation without demonstrating the source of the obligation, Plaintiffs assert in the Amended Complaint that their claims should not be barred because under the continuing clam doctrine Defendant owes "a continuing duty to Plaintiffs, each of which gives rise to a separate cause of action," and that "Plaintiffs claims are inherently susceptible to being broken down into a series of independent and distinct wrongs, each having associated damages." Amended Compl. ¶ 3. *See also* Pls' Response. The Plaintiffs' reliance on the continuing claim doctrine, however, ignores the singular and unitary nature of the action they complain of and that the action or inaction complained of cannot be broken down into a series of independent and distinct events or wrongs.

**1. The alleged failure of the United States to cause discrete and singular acts of allotment around 1866 does not invoke the continuing claims doctrine.**

Assuming the Court's subject matter jurisdiction over the Plaintiffs' claim and a money-mandating obligation by the United States, the time-barred act which Plaintiffs complain was the conveyance/nonconveyance of allotments to the Freedmen by the Tribes pursuant to the terms of the various treaties. Paramount to any continuing claims analysis in this instance is the fundamental question of whether or not, based on the claim, Plaintiffs can link the alleged wrong – the nonconveyance of allotments to Freedmen – to some wrong that occurred within the

limitations period. *Id.*

Plaintiffs assert that "Defendant[s] owe [sic] a continuing duty to Plaintiffs, each of which gives rise to a separate cause of action." Amended Compl. ¶ 3. Under the continuing claim doctrine, "when the government owes a plaintiff a continuing, recurring duty . . . a new cause of action arises with each breach of that duty." *Nicholas v. United States*, 42 Fed. Cl. 373, 379 (Fed. Cl. 1998) (internal quotation and citation omitted). As the Federal Circuit has explained:

> In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages.

*Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997) (claims arose from discrete events that occurred more than six years prior to suit and, therefore, were barred by the Statute of Limitations, 25 U.S.C. §2501), citing *Friedman v. United States*, 310 F.2d 381 (Ct. Cl. 1962). *See also Applegate v. United States*, 25 F.3d 1579, 1584 (Fed. Cir. 1994) (rejecting application of continuing claim doctrine because the case "does not involve a string of distinct events"); *Catawba Indian Tribe v. United States*, 982 F.2d 1564 (Fed. Cir. 1993); *Apache Tribe of Mescalero Reservation v. United States*, 43 Fed. Cl. 155, 164 (1999) ("A claim based upon a single distinct event, although it may have continued ill effects later on, is not a continuing claim.") (citations omitted). A claim cannot be construed as continuing "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Brown Park Estates-Fairfield Development Co.*,127 F.3d 1449, 1455 *quoting Brighton Villages Assocs. v. United States*, 910 F.2d 815, 817 (Fed Cir. 1990); *see also Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir 1990); *Lane v. United States*, 209 Ct. Cl. 955 (1975).

The singular and discrete nature of the wrong Plaintiffs allege, the nonconveyance of allotments to Freedmen pursuant to the Treaties is fatal to their continuing claim allegation and their attempt to link a 1866 claim into something that occurred in the last six years. The Plaintiffs could have brought suit at the time the Tribes failed to allot the lands in accord with the terms of the Treaties, thus stopping the "ill effects" flowing from the failure to execute allotments. *Id.* *Hopland Band*, 855 F.2d 1573 at 1578 (claimed wrong flowed from "the allegedly improper conveyance of Parcel 1 by the Government."). At bottom, the alleged duty, by its nature, is not a recurring duty. The act of allotting Freedmen lands are acts that either did or did not occur, but they are not recurring events.

**2. Authority cited by Plaintiffs does not support their continuing claim allegation.**

In support of their continuing claim allegation, Plaintiffs cite two cases which are inapposite: *Hatter v. United States*, 203 F. 3d 795 (Fed. Cir. 2000) and *Baka v. United States*, 74 Fed. Cl. 692 (2006) and two cases which are contrary to their position and actually favor Defendant's position: *Boling v. United States*, 220 F. 3d 1365 (Fed. Cir. 2000) and *Simmons v. United States*, 71 Fed. Cl. 188 (2006).

*Hatter* concerned allegedly wrongful withholdings of deductions in the paycheck of Article III Judges based on Social Security computer formulas. Plaintiffs asserted that "each successive failure to make proper payment gives rise to a new claim upon which suit can be brought." *Hatter*, 203 F. 3d at 798. The Court framed the legal issue as "whether there is a seminal event that constitutes one cause of action, or whether each wrongful deduction or refusal to pay constitutes a separate cause of action." *Id.* at 800. Citing the *Friedman v. United States* precedent, the Court favored the latter result stating that "where the payments are to be made

periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought." *Hatter*, 203 F. 3d at 798; *Friedman*, 310 F.2d 384.

*Baka* decided whether or not serviceman could recover all prior spousal benefits that were deducted from his pay pursuant to the Navy Family Allowance Act twenty years after he had retired. Finding a continuing claim, the Court observing that the case involved a challenge to periodic deductions from the Plaintiff's retirement pay which could be divided into discrete wrongs each time the money was withheld. *Baka*, 74 Fed. Cl. at 692.[5]

Unlike *Hatter* and *Baka*, the instant case concerns the singular, unitary, and discrete Treaty and agreement provisions to allot Freedmen lands as tribal members. Assuming *arguendo* a wrong, it occurred only once – at the time allotments were to be assigned. By its nature, the claim cannot be broken down into a series of independent and distinct events or wrongs over time as was the case in *Hatter* and *Baka*. The one-time act of alloting lands to the Freedmen, or the omission thereof is totally distinguishable from recurring and periodic Social Security deductions from paychecks (*Hatter*) or periodic deductions for spousal benefits (*Baka*) which occurred over a period of years up to and within the statute of limitations six-year period. For these reasons, *Hatter* and *Baka* are inapposite and lend no support to the Plaintiffs' argument.

The Plaintiffs also rely on two other cases to support their continuing claim allegation – *Boling* and *Simmons*. These case, however, are akin to the singular, discrete, and unitary nature

---

[5] Although the Court found a continuing claim in that case, in the end the Court granted Defendant's motion to dismiss because the court did not have subject matter jurisdiction over the claim. Here also, Defendant asserts that the instant Amended Complaint must be dismissed because Plaintiffs, in any event, have not met their burden of stating a cognizable claim for money damages against the United States. Discussed in Defendant's Opening Brief, Argument, Part II.

of the claims in the instant case. The judicial result in those cases actually supports Defendant's position as to Plaintiffs' continuing claim allegation. In *Boling*, the Federal Circuit considered whether Plaintiff land owners were entitled to delay a suit for money damages for land erosion claims until erosion ceased or whether the time for bringing suit was when "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." (Citing *Hopland Band*, 855 F.2d 1573 at 1577). Consistent with Defendant's position in the instant case, the Court rejected the Plaintiffs' continuing claim position, stating that: "[The doctrine] does not apply in cases where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach." *Boling v. United States*, 220 F.3d 1365 (2000). While recognizing that erosion is a gradual process, the Court concluded that the continuing claim doctrine is inapplicable because resulting increased damage is "not the result of new and independent breaches by the government, but are merely the natural and foreseeable consequences of the government's *single breach*." *Id.* at 1374. *Emphasis added.*

Similarly, in *Simmons*, a case arising from incorrectly placed land boundary markers on an allotment on the Quinault Indian Reservation where the Plaintiff's claim accrued beyond the statute of limitations, the Court rejected applicability of the continuing claim doctrine as tolling the statute stating that "the doctrine does not apply when there are not multiple events." *Simmons v. United States*, 71 Fed. Cl. at 192. "As the Federal Circuit explained, the claim must be inherently susceptible *to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages* . . . . [A] claim upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." *Id.* citing *Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449 at 1456. *Emphasis added.*

*See also Fellini v. United States*, 56 F.3d 1378 (Fed. Cir. 1995) (takings claim accrued when relevant statute was enacted; each drink taken by a horse kept on property was not a new taking); *Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 823 (1998) (Claim is not a continuing claim if it involves "only . . . one alleged wrong by the government which accrued all at once at one point in time . . . ."). As was the case in *Simmons*, the wrong complained of in the instant case occurred, if at all, at one point in time well beyond the statute of limitations period and did not constitute multiple events.

For these reason, none of the cases cited in the Plaintiffs' Response support their continuing claim allegation. The decisions in *Boling* and *Simmons* actually lend further credence to the Defendant's position urging the Court to reject the continuing claim doctrine in this case. The Plaintiffs' continuing claim allegation does not conform with the facts in this case and should be rejected.

**3. The continuing claim doctrine can have no application where subsequent land allotment agreements, modifying the treaties, superceded whatever property rights the Freedmen had pursuant to the treaties**.

Plaintiff alleges the United States had a duty shortly after the 1866 Treaties to force the tribes to complete allotments to the Freedman. While it is plain that no such money mandating duty ever existed (as virtually conceded by plaintiffs failure to respond to defendant's argument to that effect), plaintiffs cannot reasonably contend that this unitary inaction on the part of the United States is salvaged by a continuing claim theory. That specific failure to perform a purported duty to force a given specific allotment is actionable all at once when the duty arose and is barred after 6 years. It would be contrary to every policy behind the statute of limitations to allow an action to be prosecuted 140 years later.

Moreover, the United States altered the 1866 Treaties by allotment agreements at the turn-of-the-century. Given that the treaties were altered over 100 years ago, the Freedman have no plausible argument whatsoever under a continuing claim theory that they would not have had to sue at the latest within six years after the Treaty obligations changed. If the Freedman believed that the United States had no right to alter the treaties and an enforceable obligation still existed under the original 1866 treaties, they certainly had to sue by that time.

At the turn-of-the-century, allotment acts allotted lands to Tribal members, including Freedmen, of the Chocktaw, Chickasaw, Seminole, Creek, and Cherokee Tribes.[6/] These allotment agreements were intended by Congress to supercede the earlier treaties with these Tribes. As fully discussed in Defendant's Opening Brief (Argument, Part II), to the extent the Freedmen were entitled to receive land, these agreements fulfilled that entitlement. Thus, the treaties upon which the Plaintiffs rely in this suit do not and cannot give rise to the cause of action they allege.

As also discussed in Defendant's Opening Brief, Argument IV, courts have ruled that in the case of the Chocktaws and Chickasaws, the 1902 agreement superceded the earlier Treaty so that the Chocktaw and Chickasaw Freedmen had no rights to allotments under the 1866 treaty or any other law other than the 1902 agreement. *See Choctaw Nation of Indians v. United States*, 318 U.S. 423, 425, 427 (1943). In 1904 the Supreme Court in affirmed the Court of Claims, holding that the Chocktaw and Chickasaw Freedmen had no right to land, money, or trust disbursements under the 1866 treaty. *Choctaw Nation*, 318 U.S. at 426, 428. Consistent with

---

[6/] They were the following Agreements: Chocktaw, Chickasaw, 30 Stat. 495 (1898), 32 Stat. 641 (1902); Seminole, 30 Stat. 567 (1898), 31 Stat. 250 (1900); Creek, 31 Stat. 861 (1900), 32 Stat. 500 (1902); and Cherokee, 31 Stat. 848 (1901), 32 Stat.716 (1902).

Supreme Court precedent, the Claims Court also ruled in 1991 that the Chickasaw Freedmen had no right to land, money, or trust disbursements under the 1866 treaty citing *Chickasaw Freedman* and *Choctaw Nation*. *See* April 11, 1991 Order of Judge Harkins, Attachment A, hereto.[7/] By extension, that same reasoning and result would apply to Freedmen in the other Tribes who had not received allotments under the treaties. Plaintiffs have not responded at all to the Defendant's fundamental position that the 1866 treaties cannot and do not give rise to the cause of action Plaintiffs assert in this lawsuit, but if it could it would be barred by limitations. For this reason alone, the Court should dismiss the lawsuit.

## II. THE ENTITIES DO NOT FULFILL BASIC STANDING REQUIREMENTS THAT WOULD ALLOW THEM TO REPRESENT THE INTERESTS OF FREEDMEN OR LINEAL DESCENDANT

Defendant's Opening Brief and motion for dismissal also challenges the ability of the Harvest Institute Freedman Federation and the Black Indians United Legal Defense and Educational Fund to bring the lawsuit. Neither entity can allege concrete injuries that can be remedied in this action, they do not allege a property interest at stake in the litigation, and no claim is asserted by them in this action that would entitle these two entities to monetary relief. Thus, the entities do not have standing in this lawsuit. *See* Defendant's Opening Brief, Argument, Part IV.

---

[7/] Defendant discusses the April 11, 1991 Claims Court Order within the context of its position that the Court should also dismiss the Chickasaw Freedmen claims because such claims are barred by the doctrine of *res judicata*. See Defendant's Opening Brief, Argument, Part IV. The exact claim, presented by a Chickasaw ancestor to Chickasaw Freedmen, was litigated in *Casey-El v. United States*. The Claims Court's dismissal of that case was affirmed by the Federal Circuit because "[t]he doctrine of res judicata bars Casey-El from relitigating these claims to land or money under the 1866 Treaty . . . Casey-El's ancestors were bound by the results of the Supreme Court case *[in Chickasaw Freedmen, supra.]*. Casey-El stands in the position of his ancestor. Therefore, the Claims Court properly dismissed Casey-El's claim." *Casey-El v. United States*, 951 F.2d 1267 (Fed. Cir. 1991) (unpublished opinion). Attachment B, hereto. As with Defendant's basis for dismissal for the reason that the agreements supercede the treaties, Plaintiffs' Response is silent as to Defendant's *res judicata* position which warrants dismissal of the related Chickasaw Freedmen claims as well.

The Plaintiffs' Amended Complaint now alleges that the Harvest Institute Freedman Federation has a "requisite personal stake in the outcome of this action to sue in their own right and that that entity and the Black Indians United Legal Defense and Educational Fund, as Plaintiffs, "have suffered an injury that is concrete and particular, actual, directly traceable to the actions of defendants . . . ." Amended Compl. ¶ 4. Plaintiffs' Response recites these "clarifications" and cites to *International Union, United Auto., Aerospace and Agric. Implement Worker of America, et al. v. Brock,* 477 U.S. 274 (1986) to support the entities' standing in this lawsuit.

As the starting point in Defendant's response to the Plaintiffs' misplaced position on the entities' standing is the very case upon which Plaintiffs rely. *Id.* That case cautions as follows:

> In *Warth*, we noted that even where the members of an association have suffered the sort of injury that might otherwise support a suit by the association, "whether an *association* has standing to invoke the court's remedial powers on behalf of its members *depends in substantial measure on the nature of the relief sought*." An organization of construction firms, we held, could not seek damages for the profits and business lost by its members because "whatever injury might have been suffered *is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof."* Each member therefore had to be a party to the suit, and *the association lacked standing to proceed in his behalf.*

*Id.* at 287. Citing *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975). The "nature of the relief sought" in the instant case starkly distinguishes it from *Int'l Union*. In *Int'l Union* the Plaintiffs, seeking *mandamus* relief, generically challenged Agency regulations/guidelines, but did not directly seek "trade readjustment allowance" benefits. *Id*. at 284. The Supreme Court determined that the Petitioner Association had standing to sue on behalf of its members stating that "Neither these claims nor the relief sought required the District Court to consider the *individual circumstances* of any aggrieved UAW member." *Id*. at 287. *Emphasis added* . Here,

the relief sought is monetary damages to be paid to the descendants of Freedmen who allegedly did not receive Tribal allotments.

In Warth, 422 U.S. at 525, the Supreme Court, describing the basic principles of associational standing, stated that:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Warth*, 422 U.S. at 515. In *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333 (1977), the Supreme Court, relying on and quoting the *Warth* principles, established "a three-prong test for an association's standing to sue based on injury to one of its members." *United Food and Commercial Workers v. Brown Group*, 517 U.S. 544, 546 (1996). Specifically, "an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. 333 at 343. Almost twenty years later, the Supreme Court noted that "[t]hese and later precedents have been understood to preclude associational standing when an organization seeks *damages* on behalf of its members." *United Food and Commercial Workers*, 517 U.S. 544 at 554. [Emphasis added.] The Supreme Court then explained that only the first two prongs of the test are required by the "case or controversy" constitutional requirement (*id.* at 554-55), but, that the third prong is prudential in nature (*id.* at 555) and, thus, could be congressionally abrogated by Congress. *Id.* at 554.

In view of Supreme Court jurisprudence, federal courts have consistently rejected claims of associational standing to associations seeking monetary relief, as opposed to injunctive or declaratory relief, on behalf of the organization's members. *See e.g.*, *Reid v. Dept. of Commerce*, 793 F.2d 277 (Fed. Cir. 1986) (holding union lacked standing to assert back pay claims for its members because each claim depended on member's individual circumstances); *Telecommunications Research & Action Ctr. v. Allnet Communication Services, Inc.*, 806 F.2d 1093 (D.C. Cir. 1986) (concurring opinion) (held that association did not have associational standing to bring a suit for damages on behalf of its members); *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 847 F. Supp. 281, 286 (D. Conn. 1994) (held that association failed to meet third part of *Hunt* test because third parties would be required and only relief sought was for money damages); *Committee of Blind Vendors v. District of Columbia*, 695 F. Supp. 1234, 1238-39 (D.D.C.1988) (held no standing for association when seeking damages for breach of contract), rev'd on other grounds, 28 F.3d 130 (D.C. Cir. 1994); *Vietnam Veterans of America, Inc. v. Guerdon Indus.*, 644 F. Supp. 951, 966 (D.Del.1986) (damages in fraud case will require proof unique to each member).

Here, the entities do not have associational standing to represent individual Indian beneficiaries because the third *Hunt* prong cannot be fulfilled in this case. Both the "claim asserted . . . [and] the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Under the principles of *Hunt*, the Plaintiff entities lack standing to seek monetary relief for potentially several thousand individual descendants of Freedman, each of whom in his personal capacity would have to prove his respective relationship to an identified Freedman, the individual circumstances of each claim, identity of each particular allotment, and the value thereof on a date certain.

For these compelling reasons, the Harvest Institute Freedman Federation the Black Indians United Legal Defense and Educational Fund must be dismissed as parties in this case.

## III. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THE COURTS JURISDICTION, NOR HAVE THEY STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED

The Defendant seeks dismissal of the Plaintiffs' claims pursuant to Rules of the United States Court of Federal Claims ("RCFC"), Rule 12(b)(1) because they have not met their burden of showing that the Court has subject matter jurisdiction of the case. Specifically, they have not demonstrated that the 1866 Treaties, by themselves, imposed trust money mandating duties on the United States to convey lands to the Freedmen or that, assuming money mandating duties, that the United States failed to fulfill such duties. *See* Defendant's Opening Brief and Argument, Part III. The Defendant also seeks dismissal of the Plaintiffs' claims pursuant to RCFC 12(b)(6) because they have failed to state a claim upon which relief can be granted: the Seminole, Creek, and Cherokee Treaties did not Entitle the Freedmen to property; and the Choctaw and Chickasaw Freedmen were not entitled to private property rights because the condition precedent to their rights to allotments never occurred. *See* Defendant's Opening Brief and Argument, Part III. Finally, the Plaintiffs' do not dispute that the doctrine of *res judicata* bars the claims of the Chickasaw Freedmen in this case as a consequence of prior litigation. *See* Defendant's Opening Brief and Argument, Part IV.

The Plaintiffs' failure to meet their burden of establishing the Court's jurisdiction over the case (*Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) citing *KVOS, Inc. v. Associated Press*, 299 U.S. 278 (1936)) or to identify money-mandating provisions that vest the Court with subject matter jurisdiction (*Allred v. United States*, 33 Fed. Cl. 349, 353 (1995)) are fatal to their claims.

## Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss should be granted.

Dated this 30th Day of August, 2007.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/*Daniel G. Steele*
Daniel G. Steele
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C., 20044-0663
Tel: (202) 305 - 0484
Facsimile: (202) 305-0267

Of Counsel:
Jane Smith, Esquire
Attorney-Advisor
Bureau of Indian Affairs
United States Department of the Interior
1849 C Street
Washington, D.C. 20240

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 30TH day of August, 2007 the foregoing Defendant's Reply in Support of Defendant's Motion to Dismiss was filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

Percy Squire, Esquire
Attorney for Plaintiffs
Percy Squire Co., L.L.D.
514 S. High Street
Columbus, OH 43215

/s/*Daniel G. Steele*
Daniel G. Steele, Attorney