EXHIBIT B

Westlaw.



C
Casey-El v. U.S.
C.A.Fed.,1991.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Federal Circuit.
Sammy Lee CASEY-EL, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
**No. 91-5076.**

Dec. 16, 1991.

Cl Ct

AFFIRMED.

Before RICH, RADER and ALARCON,[FN*] *Circuit Judges.*
PER CURIAM.
*1 Sammy Lee Casey appeals the April 11, 1991 Order of the United States Claims Court. In that Order, the Claims Court dismissed Casey-El's complaint as barred by the doctrine of res judicata or collateral estoppel. This court *affirms.*

During the Civil War, the Chickasaw and Choctaw Indian tribes fought alongside the Confederacy. Both tribes had slaves. After the Civil War, the Chickasaws and Choctaws pledged their allegiance to the United States in a council held at Fort Smith, Arkansas. *See Choctaws Nation I,* 179 U.S. 494, 523-26 (1900). This council produced the Treaty of 1866. 14 Stat. 769. Under the Treaty, the tribes agreed to abolish slavery and transfer land to the United States. The United States agreed to pay the tribes $300,000. This money would remain in trust, however, until the tribes granted each of the freedmen 40 acres of land and political rights.

The Treaty called for the United States to act within 90 days to "remove from said nations all such persons of African descent as may be willing to remove." 14 Stat. 770. Freedmen who decided to remain in the territory would not receive the benefit of the trust fund. If the tribes did not provide land and political rights for the freedmen within two years, the trust would go "for the use and benefit of such said persons of African descent as the United States shall remove from the said territory in such manner as the United States shall deem proper." *Id.* Under the Treaty, the freedmen and their descendants would receive a 40-acre allotment in the event that the tribes decided to adopt its freedmen as members.

Neither the Chickasaw tribe nor the United States satisfied the 1866 Treaty. After several decades of legal dispute, the Supreme Court considered the 1866 Treaty and the rights of the freedmen and tribes. *The Chickasaw Freedmen,* 193 U.S. 115 (1904). The Court held that the Chickasaw tribe had not adopted the freedmen. *Id.* at 126. The freedmen, therefore, did not qualify for the 1866 Treaty benefits. However, the Court determined the United States owed the Chickasaw freedmen and their descendants 40 acres of land. The Government, therefore, prepared a final roll of eligible freedmen.

Casey-El seeks land and money under the terms of the 1866 Treaty. The Supreme Court, however, rejected those claims. The 1866 Treaty promised benefits to these freedmen adopted into the tribe. Specifically, adopted freedmen would get either land and political rights within the Chickasaw-Choctaws territory or $100 if they relocated. The Supreme Court, however, determined that "the freedmen were not adopted into the Chickasaw tribe and necessarily did not acquire the rights dependent upon adoption." *Chickasaw Freedmen,* 193 U.S. at 126.

Moreover Casey-El cannot claim a share of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$300,000 trust fund. The Supreme Court clarified that the Treaty only provided freedmen a share in the fund if the United States removed them from the tribes' territory. *Id.* at 127. In the words of the Supreme Court, "Congress did not choose and has not chosen to remove them." *Id.* Therefore, the freedmen did not qualify for a share of the tribes' trust fund.

***2** The doctrine of res judicata bars Casey-El from relitigating these claims to land or money under the 1866 Treaty. *See, e.g., Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398 (1981). The Supreme Court adjudicated the rights of the Chickasaw freedmen as a class. Casey-El's ancestors were bound by the results of the Supreme Court case. Casey-El stands in the position of his ancestor. Therefore, the Claims Court properly dismissed Casey-El's claim.

FN* Judge Arthur L. Alarcon, United States Court of Appeals for the Ninth Circuit, sitting by designation.

C.A.Fed.,1991.
Casey-El v. U.S.
951 F.2d 1267, 1991 WL 263714 (C.A.Fed.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.